OPINION
{¶ 1} B. M., a juvenile, appeals from an order revoking his community control status, previously imposed with respect to acts adjudicated to have constituted delinquency, and ordering him remanded to the custody of the Ohio Department of Youth Services for two minimum terms of six-months, each, to be served consecutively, up to a maximum of his twenty-first birthday.
 {¶ 2} Appellate counsel has filed a brief citing Anders v.California (1967), 368 U.S. 738, noting that counsel could find no potentially meritorious issues for review. B. M. was notified, by order of this court filed February 7, 2007, that his assigned counsel had filed an Anders brief, and was given sixty days within which to file his own, pro se brief. He has not done so.
 {¶ 3} Pursuant to Anders v. California, supra, we have independently reviewed the record. The record discloses that B. M. already had an extensive juvenile record when he admitted to having committed two acts, the possession of cocaine and the possession of criminal tools, that would constitute felonies if committed by an adult. On the basis of his admission, he was adjudicated, and intensive community control was ordered. Included in the order was release from a local detention facility and placement on electronic home monitoring.
 {¶ 4} B. M. cut off his electronic ankle monitor, damaging it in the process, *Page 3 
absconded, and used illegal drugs. As a result, an application to revoke his community control was filed. This application was heard by a magistrate. The most telling testimony at that hearing was B. M.'s testimony on cross-examination:
 {¶ 5} "Q. Mr. . . ., you were placed at Kindred Spirits; is that correct?
 {¶ 6} "A. Yes.
 {¶ 7} "Q. What was the nature of that placement?
 {¶ 8} "A. That I had to do six months, and that if I didn't complete the program, that I would be sent to DYS.
 {¶ 9} "Q. And what was the purpose of the program?
 {¶ 10} "A. To get me out of society.
 {¶ 11} "Q. Okay. Did they evaluate your drug dependency at that time?
 {¶ 12} "A. Yes, they did.
 {¶ 13} "Q. What happened with that placement, sir?
 {¶ 14} "A. Oh, they said I made a blade or something underneath the mattress. I don't even know what it really was, and they told me that I was kicked out (inaudible).
 {¶ 15} "Q. So you were terminated unsuccessfully?
 {¶ 16} "A. Yes, I was.
 {¶ 17} "Q. And then you had the opportunity to be placed on electronic monitoring; is that correct?
 {¶ 18} "A. Yes.
 {¶ 19} "Q. And while you were off of that, you, then, used drugs again; is that correct?
 {¶ 20} "A. Yes. *Page 4 
 {¶ 21} "Q. What were those drugs, please?
 {¶ 22} "A. Cocaine, marijuana and pills.
 {¶ 23} "Q. What kind of pills, sir.
 {¶ 24} "A. Klonopins, I think.
 {¶ 25} "Q. Do you consider those to be serious drugs?
 {¶ 26} "A. Probably cocaine.
 {¶ 27} "Q. Okay. Not the other pills or the marijuana?
 {¶ 28} "A. No.
 {¶ 29} "Q. Okay. And then you were placed at West Central; is that correct?
 {¶ 30} "A. Yes.
 {¶ 31} "Q. Okay. And your concern was that you were not getting enough drug treatment; is that what your testimony is?
 {¶ 32} "A. Yes.
 {¶ 33} "Q. And you decided because things were not progressing in the manner that you would like that you would give up; is that correct?
 {¶ 34} "A. Yes.
 {¶ 35} "Q. And now your testimony is that you believe you can be clean in the community?
 {¶ 36} "A. Yes, I do.
 {¶ 37} "Q. With only attending meetings; is that correct?
 {¶ 38} "A. Yes."
 {¶ 39} At the conclusion of the hearing, the magistrate explained her reasoning for making the minimum commitments to DYS consecutive: *Page 5 
 {¶ 40} "Typically, I would make this a concurrent sentence, but essentially, B — would no sooner go through intake at the Department of Youth Services and he would be right out [due to credit for local detention previously served], and he wouldn't gain anything from that experience. So I'm going to commit him for a minimum period of six months on each count to run consecutively only because I want B — to get some substance abuse treatment. He claims that was an issue of his at West Central. I want to make sure that you get it at the Department of Youth Services. I'm going to request in the entry, rather, not directly tell them, but advise them of your substance abuse concerns in the entry and perhaps they will put you in a place where substance abuse concerns are entirely what are addressed as well. So typically I would have made this a concurrent sentence but for the fact that you wouldn't even get through intake and your time served would have brought you right back to Greene County."
 {¶ 41} In her written decision, the magistrate made the following findings:
 {¶ 42} "Based on the evidence, testimony and the Court's records, the Court finds that reasonable efforts have been made to prevent the removal of the child from the home, to eliminate the continued removal from the home, and to make it possible for the child to return home, to wit: traditional probation, intensive probation and placement at West Central and Kindred Spirits has been provided to the Juvenile. Mr. M — has interrupted with placement by being disruptive and combative while refusing to participate in treatment.
 {¶ 43} "The Court further finds that the child's continued residence in the home or his/her return to the home would be contrary to the welfare and best interest of the child because the Child has a serious substance abuse problem. *Page 6 
 {¶ 44} "Placement at the Department of Youth Services is the least restrictive alternative placement available, in the closest proximity to the family, which meets the best interest of the child."
 {¶ 45} It does not appear that any objections to the magistrate's decision were filed. The trial court adopted that decision, and made it the order of the trial court.
 {¶ 46} We conclude that there is abundant evidence in the record to support the findings of the trial court. Under the circumstances of this case, we further conclude that the disposition ordered by the trial court, including, specifically, the decision to make consecutive the two, six-month minimum commitments to the DYS, does not remotely approach an abuse of discretion. In our independent review of the record, we have found no potential assignments of error having arguable merit.
 {¶ 47} In short, we find this appeal to be wholly frivolous. The judgment of the trial court is Affirmed.
 WOLFF, P.J., and GRADY, J., concur. *Page 1